UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ROMO,<br><br>        Plaintiff,<br><br>    v.<br><br>SHIMMICK CONSTRUCTION COMPANY, INC.,<br><br>        Defendant. | Case No. 14-cv-02403-JCS<br><br>**ORDER GRANTING MOTION TO REMAND, DENYING FOR LACK OF JURISDICTION MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT EX PARTE APPLICATION**<br><br>**Dkt. Nos. 10, 16, 48** |

## I.  INTRODUCTION

Plaintiff Juan Romo moves to remand this action to state court after removal by Defendant Shimmick Construction Company, Inc. ("Shimmick") from the Superior Court of California, Alameda County.  Shimmick asserts that federal question jurisdiction exists because section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), preempts certain state law causes of action.  Romo filed a Motion to Remand (Dkt. 10), contending the First Amended Complaint does not raise any federal question and that he is not bound by any collective bargaining agreement ("CBA") that would cause section 301 of the LMRA to preempt his state law claims.

Shimmick filed a motion to stay this action and compel arbitration (the "Motion to Compel," Dkt. 16) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4.  Romo opposes the Motion to Compel, arguing again that he is not bound by any CBA containing an arbitration agreement, and that the arbitration provisions of the purported CBAs are unconscionable.

The Court held a hearing on the Motion to Remand on July 25, 2014, and a hearing on both Motions on September 19, 2014, and ordered additional discovery after the first hearing and

supplemental briefing after the second. For the reasons explained below, Romo's Motion to Remand is GRANTED, and Shimmick's Motion to Compel is DENIED for lack of jurisdiction. Romo also filed an ex parte application requesting that the Court consider additional evidence. That application is DENIED as moot.[1]

## II. BACKGROUND

### A. Factual and Procedural Background

Romo filed this action against Shimmick on April 17, 2014, in the Superior Court of California, Alameda County, Case No. HG14721863, on behalf of himself and all other similarly situated individuals. *See* Notice of Removal, Ex. E (First Amended Complaint) ("Complaint" or "FAC"). Romo alleges that he was continuously employed by Shimmick from October 2011 to approximately April 23, 2013. *Id.* ¶ 18.

The First Amended Complaint alleges seven statutory causes of action under state law: failure to pay employees for hours worked in violation of California Labor Code § 1194; failure to provide meal and rest periods in violation of Labor Code §§ 512 and 226.7 and California IWC Wage Order 16; failure to reimburse employees for necessary business expenses in violation of Labor Code § 2802; failure to include accurate information in employees' wage statements in violation of Labor Code § 226; failure to provide all compensation upon termination of employment in violation of Labor Code §§ 201−03; conduct in violation of Business Professions Code § 17200 *et. seq.*; and a Private Attorneys General Act claim under Labor Code §§ 2698−99.5.

Shimmick removed this case to federal district court asserting federal question jurisdiction on the basis that certain claims are preempted by section 301 of the LMRA, 29 U.S.C. § 185(a). Shimmick states that Romo was an employee of a joint venture between Shimmick and Obayashi Corporation, known as the Shimmick Construction Company Inc./Obayashi Corporation JV (the "Joint Venture"). Declaration of Scott Fairgrieve in Support of Notice of Removal ("Fairgrieve Decl.," Dkt. 14-1) ¶ 2. Shimmick submitted a joint venture agreement which shows that the Joint

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Venture was established "for the exclusive purpose of bidding on construction and related work on the San Vincente Dam Raise Project . . . and, if awarded a contract for work on the Project to enter into and perform the contract . . . ." Fairgrieve Decl. Ex. 1. The Joint Venture was awarded a portion of the San Vincente Dam Raise Project. Fairgrieve Decl. ¶ 2.

The Joint Venture then signed a Letter of Assent agreeing to be bound by the Emergency Storage Project Labor Agreement (the "Project Labor Agreement") dated June 1, 1999 that had been entered into by and between Parsons Constructors, Inc., the Building and Construction Trades Department, AFL-CIO, and other international and local unions including Laborers' International Union of North America, Local No. 89 ("Local 89"). Fairgrieve Decl. ¶ 3, Ex. 2 (Letter of Assent), Ex. 3 (Project Labor Agreement). Article II, section 4 of the Project Labor Agreement provides:

> The provisions of this Project Labor Agreement (including the Schedule A's, which are the local Collective Bargaining Agreements between bona fide contractor groups or representatives and the signatory Unions having covered work that corresponds to Qualifying Work on the Project) shall apply to the work covered by this Agreement . . . .

Fairgrieve Decl. Ex. 3 at 6, § 4.

Shimmick states that, through the Project Labor Agreement, the Joint Venture became party to multiple collective bargaining agreements (collectively, the "CBAs"). *See* Fairgrieve Decl. ¶ 5 & Exs. 4, 5. There is no evidence that Shimmick itself, as opposed to the Joint Venture, entered into or agreed to be bound by any CBA relevant to this case.

### B. Motion to Remand and Supplemental Briefing

In the Motion to Remand, Romo states that during his employment with Shimmick, he was not subject to any CBA that would enable section 301 of the LMRA to preempt his claims. Romo also contends the First Amended Complaint only asserts state law claims that are not preempted by section 301 of the LMRA. In response to the Motion to Remand, Shimmick presents evidence that, Shimmick contends, proves that Romo was subject to the CBAs. Shimmick also argues removal was proper because Romo's first, third, and fourth claims are preempted by section 301 of the LMRA.

1    The Court twice requested supplemental briefing.  The first round pertained to Romo's
2 purported union membership.  Shimmick had initially submitted a Local 89 Referral, which,
3 according to Shimmick, demonstrated that Romo was a union member bound by the CBAs as of
4 his date of hire on October 20, 2011.  Fairgrieve Decl. Ex. 6.  In the two places that the Referral
5 requests Romo's signature, however, the signature line remains blank.  *See id.*  Because Romo
6 denied that he was a member of Local 89, the Court ordered additional discovery and briefing
7 regarding Romo's union membership.  *See* Civil Minute Order (Dkt. 27).  Shimmick subpoenaed
8 Local 89 for records related to Romo and submitted evidence including: (1) a "Member Specific
9 Dues Payment Tracking Report" indicating that Romo is an "active" member of Local 89, has paid
10 dues since November 2011, and paid "service charges" from March 2011 through October 2011;
11 (2) an "LBOB Transaction History" report indicating Romo's employment history and trust
12 contributions; (3) Romo's application to join Local 89; and (4) a screen capture that appears to
13 depict an entry for Romo in a Local 89 computer database.  Supplemental Declaration of William
14 A. Bogdan in Opposition to Plaintiff's Motion to Remand ("Bogdan Supp'l Decl.," Dkt. 40), Ex.
15 E.
16    At the September 19 hearing, the Court raised the issue of whether Shimmick had standing
17 to assert any rights under the CBAs, given that the Joint Venture agreed to be bound by the CBAs
18 but Shimmick itself did not.  Shimmick suggested that it could nevertheless invoke the CBAs on
19 behalf of the Joint Venture based on principles of partnership law, and the Court requested a
20 second round of supplemental briefing on that issue.

21    **C.    Motion to Stay Action and Compel Arbitration**

22    Shimmick moves to stay this action pending arbitration pursuant to 9 U.S.C. § 3, and to
23 compel arbitration pursuant to 9 U.S.C. § 4.  Shimmick argues that all of Romo's claims concern
24 the application or interpretation of the CBAs, and are therefore governed by the mandatory
25 arbitration provisions of the CBAs.  Romo again disputes that he is bound by any CBA, and
26 further argues that the arbitration provisions of the CBAs are unconscionable.

### III.   ANALYSIS OF MOTION TO REMAND

#### A.   Legal Standard for Removal and Remand

A defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441. A plaintiff may move to remand the case to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). The removal statutes are construed restrictively so as to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108−09 (1941). The Ninth Circuit recognizes a "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotations omitted). Any doubts as to removability should be resolved in favor of remand. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The defendant bears the burden of showing that removal is proper. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

"As a general rule, 'the presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, (1987)) (alterations omitted). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. 386 at 392.

The corollary to this rule, however, is the "complete preemption" doctrine, which states that the preemptive force of some statutes is so strong that they "completely preempt" an area of state law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

#### B.   Preemption by the LMRA

In this case, Shimmick seeks to apply the "complete preemption" doctrine through section 301 of the LMRA, which states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the

5

amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The Supreme Court has held that the preemptive scope of section 301 encompasses cases where resolution "is substantially dependent upon analysis of the terms of [a CBA]."  *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Ramirez v. Fox Television Station*, 998 F.2d 743, 748 (9th Cir. 1993) (holding that preemption applies to claims "either based upon a collective bargaining agreement or dependent upon an interpretation of the agreement").  "Accordingly, preemption based on section 301 is proper 'even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it.'"  *Rodriguez v. Pac. Steel Casting Co.*, No. 12-0353 NC, 2012 WL 2000793, at *3 (N.D. Cal. June 1, 2012) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

    **C.**    **Romo's Claim Does Not Require Interpretation of the CBA Because Shimmick Is Not a Party to the CBA**

Although Romo has raised a number of arguments as to why this case does not implicate the CBA, the Court focuses on whether Shimmick—not itself a party to the CBA—has any basis to invoke the CBA in this litigation.  The analysis below assumes for the sake of argument that Romo is a member of Local 89.

Shimmick maintains that it did not directly employ Romo, and that Romo was instead employed by the Joint Venture.  *See* Def.'s 2d Supp'l Br. (Dkt. 52) at 6.  Thus, according to Shimmick, Romo's claims implicate the CBAs in effect between the Joint Venture and Local 89.  Shimmick's arguments initially failed to address the fact that the Joint Venture is not a party to this case.  The Court inquired at the September 19 hearing how Shimmick can enforce CBAs to which it is not a party, and requested supplemental briefing.

    **i.**    **No Facts in Evidence Support Shimmick's Ability to Enforce the CBAs**

In its Second Supplemental Brief, Shimmick argues primarily that "[t]his Court has the power to examine facts outside the complaint."  Def.'s 2d Supp'l Br. at 2.  Shimmick cites a number of cases in which courts have considered extrinsic evidence to determine whether jurisdiction was proper.  *Id.* at 2−7 (citing, *e.g.*, *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d

1  994 (9th Cir. 2007), *abrogated in part*, *Std. Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)).
2  The Court recognizes that it may review such evidence, but neither the cases that Shimmick cites
3  nor the evidence that Shimmick has submitted address the issue of whether Shimmick may invoke
4  CBAs on behalf of the Joint Venture. The only documents in evidence that might be expected to
5  address that issue are the Joint Venture Agreement and the CBAs themselves. *See* Fairgrieve
6  Decl. Exs. 1, 4, 5. Shimmick has not identified, and the Court has not found, any provisions of
7  these agreements that allow an individual member of the Joint Venture to enforce the CBAs.

        **ii.    Fraudulent Joinder Is Not Applicable**

9  Many of Shimmick's cases relate to the doctrine of fraudulent joinder. That doctrine
10 requires federal courts assessing diversity jurisdiction to disregard non-diverse defendants who
11 have been included only destroy diversity, and against whom a plaintiff has no actual claim. *See*
12 *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). The doctrine "protect[s] a
13 defendant's legitimate right to remove in service of the purposes of diversity jurisdiction."
14 *Simpson v. Union Pac. R.R. Co.*, 282 F. Supp. 2d 1151, 1155 (N.D. Cal. 2003). It been applied in
15 the context of federal question jurisdiction, as opposed to diversity jurisdiction, "in only a few,
16 narrow instances" to disregard baseless claims that would for one reason or another prevent
17 removal of legitimate federal claims. *See id.* at 1155−56.
18 Shimmick argues that Shimmick "in effect has been fraudulently joined" because it was
19 not Romo's employer. Def.'s 2d Supp'l Br. at 6. The Court, however, finds that the doctrine of
20 fraudulent joinder is not applicable even if Shimmick was not Romo's employer. This is not a
21 diversity case, and there are no other defendants whose right to a federal forum must be protected.
22 Nor does Shimmick claim that Romo included baseless claims under statutes that preclude
23 removal. *Cf. Simpson*, 282 F. Supp. 2d at 1156 (citing as examples the Securities Act of 1933, the
24 Federal Employers' Liability Act, and the Jones Act). Even if the doctrine could apply, it is not
25 clear what the remedy would be. Where a party has been fraudulently joined, as Shimmick claims
26 that it "in effect" has been here, the court will disregard that party in its analysis of jurisdiction.
27 *See Morris*, 236 F.3d at 1067. But disregarding Shimmick—the only defendant named in the
28 Complaint—would leave this Court without any defendant at all, and thus without a case or

controversy.

This is not to say that the sole defendant in a case is left without recourse if it believes the plaintiff's claim is baseless. The party can file a dispositive motion in a court that has jurisdiction. The Court is aware of no authority, however, that allows a defendant to remove a state-law case to federal court on the basis that the plaintiff should instead have brought a federal claim against a different defendant.

### iii. The Present Complaint Does Not Allege that Shimmick Is Vicariously Liable on Behalf of the Joint Venture

Shimmick also suggests that it should be able to invoke the CBA because "[a]n employee of a joint venture is an employee of each individual member of the joint venture." Def.'s 2d Supp'l Br. (dkt. 52) at 6 (citing *Horney v. Guy F. Atkinson Co.*, 140 Cal. App. 3d 923, 927 (1983)). The converse, however, is not true. A subsequent California appellate decision, examining *Horney*, held "that an employee of one party in a joint venture is not as a matter of law also an employee of the joint venture itself." *Rogness v. English Moss Joint Ventures*, 194 Cal. App. 3d 190, 191 (1987).[2] If Romo were an employee of Shimmick only by virtue of his status as an employee of the Joint Venture, it would stand to reason that Shimmick could invoke the same contractual rights in its defense as the Joint Venture would be able to (although Shimmick has cited no authority addressing that issue of contract law). But if, as Romo contends, he was employed by Shimmick directly and *not* by the Joint Venture, as is legally possible under *Rogness*, there is no indication that the CBA would govern his employment. Shimmick, set in its view that the Joint Venture is the actual employer, has not addressed whether the CBA could ever govern Shimmick's relationship with Shimmick's non-Joint Venture employees. Because Shimmick

---

[2] It is also not entirely clear whether the holding of *Horney* is still good law. In holding that an employee of a joint venture is an employee of each joint venturer, *Horney* cited *Sonberg v. Bergere* and *Reed v. Industrial Accident Commission*, each of which in turn relied on the proposition that "a partnership is [generally] not recognized as distinct entity separate from its members." *See Sonberg*, 220 Cal. App. 2d 681, 682 (1963) (citing *Reed*, 10 Cal. 2d 191, 192−93 (1937)). In California, that is no longer the law: the Corporations Code now provides that "[a] partnership is an entity distinct from its partners." Cal. Corp. Code § 16201; *see also* 6 B.E. Witkin, Summary of California Law, Partnerships § 23 (10th ed. 2005) (summarizing this change in doctrine). For the purpose of the present Motion to Remand, however, the Court need not resolve this issue.

carries the burden to show that removal is proper, for the purpose of the present Motion to Remand the Court concludes that Shimmick could not enforce the CBA with respect to non-Joint Venture employees.

There are two theories under which Romo could seek to hold Shimmick liable. Under one theory, Romo was employed directly by Shimmick, and the CBAs do not apply. Under the other theory, Shimmick was legally Romo's employer only by virtue of Romo's employment with the Joint Venture, and the CBA might apply. The key question is whether Romo's present Complaint is broad enough to support both theories. If it is, the identity of Romo's employer would be a relevant consideration as to whether removal was warranted, because there could be federal jurisdiction based on the LMRA if Romo was employed by the Joint Venture. The employer's identity would thus be a proper inquiry for this Court in ruling on the Motion to Remand.

If the Complaint is not so broad, however, and encompasses only the direct employment theory, the identity of the employer is not a jurisdictional issue, but instead a dispositive issue. Taking that view, either Romo was employed directly by Shimmick and the CBA has no bearing on the case, or Romo was employed by the Joint Venture and cannot recover at all based on the allegations of the Complaint. Neither of those possibilities would require a court to interpret or apply the CBA. Accordingly, under the narrow view of the Complaint, there is no basis for removal regardless of whether Shimmick was the direct employer, and for this Court to resolve that question would improperly usurp the role of the state court, or perhaps even the role of the jury.

Romo's counsel embraced a narrow construction of the Complaint at the September 19 hearing, stating: "We're not trying to go after one part of this partnership because of anything the joint venture did. We're trying to go after a distinct individual entity which we're saying is the employer and didn't pay the wages." Similarly, Romo's Second Supplemental Brief asserts that the claim is limited to the theory that Shimmick directly employed Romo. Pl.'s 2d Supp'l Br. (Dkt. 53) at 2 ("Plaintiff has sued Shimmick and Shimmick alone for violations of the California Labor Law. . . . Plaintiff has properly alleged that [Shimmick is] the correct employer." (emphasis omitted)). Romo has made clear that he does not intend or desire to sue the Joint Venture, or to

pursue a theory that Shimmick is vicariously liable for the Joint Venture's conduct.

Several factors weigh in favor of accepting Romo's position that the Complaint is limited to the direct-employer theory. For one, nothing in the Complaint clearly encompasses the alternative theory that Shimmick is liable as a member of the Joint Venture.[3] The plaintiff is the master of his complaint, and is entitled to plead a narrow theory if he chooses. *See Caterpillar*, 482 U.S. at 392 ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."). The Court is reluctant to read into Romo's Complaint a theory of recovery that does not appear on its face and that Romo has disclaimed any intention to pursue. Further, the Court must resolve any doubt in favor of remand, *Matheson*, 319 F.3d at 1090, and in this case that presumption supports a narrow view of the Complaint. Finally, there is little risk of prejudice to Shimmick, because if Romo successfully obtains remand based on the argument that his present Complaint does *not* encompass a theory of liability where Romo was employed by the Joint Venture, he would likely be estopped from later seeking to recover on such a theory.[4] *See New Hampshire v. Maine*, 532 U.S. 742, 750−51 (2001) (explaining that judicial estoppel is appropriate where a party would achieve an unfair advantage by asserting a position "clearly inconsistent" with a position on which the same party previously achieved success).

The Court therefore concurs with Romo's view of the scope of the Complaint, and holds that Romo's claim necessarily rests on Romo being employed directly by Shimmick, and not by the Joint Venture. Accordingly, the Complaint presents no basis for federal jurisdiction because it does not rely on or require interpretation of the CBA, regardless of which entity directly employed Romo.[5] With no basis for subject matter jurisdiction, the case must be remanded.

---

[3] The Complaint states that "Plaintiff Romo was continuously employed by Defendants." FAC ¶ 18. Shimmick is the only named defendant; the remaining defendants are Does 1 through 10. *See id.* ¶ 5 ("Plaintiff will seek leave of court to amend this complaint to allege their true names and capacities after the same have been ascertained."). It is conceivable that Romo could amend to identify a Doe defendant as the Joint Venture, but any such amendment would present a new opportunity for removal. *See* 28 U.S.C. § 1446(b)(3) (providing for removal based on an amended pleading).

[4] At least without amending his Complaint, which would give Shimmick a new opportunity for removal. *See* 28 U.S.C. § 1446(b)(3).

[5] Shimmick has not argued that the case is removable under the Class Action Fairness Act, 28

**D.     Remaining Motion and Ex Parte Application**

Shimmick has moved to compel arbitration pursuant to the CBA. In light of the holding above that Romo's Complaint falls outside of federal subject matter jurisdiction, the Court lacks jurisdiction to compel arbitration. Shimmick's Motion to Compel is therefore DENIED.

Romo filed an ex parte application requesting that the Court consider additional evidence regarding the identity of Romo's employer. Dkt. 48. As discussed above, the identity of the employer does not affect the Court's determination of whether to remand the case to state court. Romo's application is therefore DENIED as moot.

## IV.     CONCLUSION

For the reasons discussed above, Romo's Motion to Remand is GRANTED, Shimmick's Motion to Compel Arbitration is DENIED for lack of jurisdiction, and Romo's ex parte application to consider evidence is DENIED as moot. The case is hereby remanded to the Superior Court of California, Alameda County, and the clerk is instructed to close the case in this Court.

**IT IS SO ORDERED.**

Dated: November 14, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

U.S.C. § 1332(d), or for any other reason besides the LMRA.

11